**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BIG RIVER TELEPHONE COMPANY, LLC, )<br>)<br>Defendant. )<br>_____ ) | Case No. 08-CV-2046-JWL-JPO<br><br>JURY TRIAL DEMANDED |

**SPRINT COMMUNICATIONS COMPANY L.P.'S MOTION FOR ENTRY OF A PROTECTIVE ORDER GOVERNING DISCOVERY THAT INCLUDES AN IN-HOUSE COUNSEL PROVISION THAT SPECIFICALLY ALLOWS SPRINT'S IN-HOUSE COUNSEL, LEE LAURIDSEN, ACCESS TO BIG RIVER'S CONFIDENTIAL INFORMATION**

Pursuant to Fed. R. of Civ. P. 26(c), Sprint Communications Company L.P. ("Sprint") respectfully moves the Court to enter a protective order in this case that includes a provision allowing disclosure of confidential information to in-house attorneys on a counsel-by-counsel basis. Moreover, Sprint moves to designate Lee Lauridsen, an in-house attorney for Sprint, as one of those in-house attorneys with access to confidential information. For the reasons set forth below, the provision proposed by Sprint will facilitate a speedy and just resolution in this case.

**I.   Introduction**

Sprint and Big River agree that a protective order is warranted in this case. Though the parties have agreed to most of the language set forth in the proposed order, Big River refuses to allow any in-house counsel access to "Highly Confidential" information.[1]   The

---

[1] Sprint states, pursuant to D. Kan. Rule 37.2, that it has met and conferred repeatedly with counsel for Big River, both via e-mail and telephone, over the past weeks in an attempt to come to an agreement on a proposed protective order. The parties have been unable to come to

Proposed Order is attached to this motion as Exhibit A with the specific provision in dispute, paragraph 7.3(b), indicated in bold type.[2]  The parties propose a blanket protective order that provides two levels of protection: "Confidential" and "Highly Confidential—Attorneys' Eyes Only."  *See* Ex. A ¶ 5.  Paragraph 7.3 of the Proposed Order lists the classes of people who can access "Highly Confidential—Attorneys' Eyes Only" information.  Big River, however, seeks a more restrictive protective order that would prevent any in-house counsel from viewing "Highly Confidential" information.  Big River's position is contrary to well-established law in the Federal Circuit and this Court, and effectively prevents any in-house attorney at Sprint from doing their job, supervising this litigation, and advising their client.  Indeed, given the overwhelming number of courts that have rejected a blanket exclusion of in-house counsel, it is not surprising that every other defendant in the related Sprint cases has agreed to a very similar provision to that proposed by Sprint.  Big River's position is wholly without support and must be rejected.

Once the in-house counsel provision is included in the Protective Order, Sprint seeks permission from the Court to identify Lee Lauridsen, one of Sprint's in-house counsel, as an individual entitled to access Highly Confidential information.  Because Mr. Lauridsen is not a "competitive decisionmaker," he is entitled to access under the standards set forth by the Federal Circuit.

## II. Restricting an Attorney's Access to Confidential Information Solely Because of In-House Counsel Status Runs Afoul of Established Case Law and Will Significantly Prejudice Sprint

Restricting an in-house attorney's access to confidential information must be determined on a case-by-case basis. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468-69 (Fed. Cir. 1984).  The party seeking to prevent an in-house attorney's access to this confidential

---

agreement on access to Highly Confidential documents by in-house counsel, which necessitated the instant motion.

[2] For convenience, a copy of Exhibit A has also been sent to chambers in WordPerfect format.

information bears the burden of establishing good cause for restricting documents by showing that "the competitive harm that would befall them by virtue of . . . disclosure to in-house personnel." *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 501 (D. Kan. 2007); *see also Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003). Moreover, in seeking to restrict access, a party must set forth more than just "stereotyped and conclusory statements." *Id.* Rather, it must "make a particular and specific demonstration of fact," warranting a denial of access. *Id.* Therefore, in order to prevent Sprint's in-house counsel from viewing its confidential information, Big River must establish "a probability of serious risk to confidentiality." *In re: Indep. Serv. Orgs. Antitrust Litig.*, 1995 U.S. Dist. LEXIS 4698, at *3 (D. Kan. Mar. 9, 1995).

Big River cannot possibly establish "good case" for excluding an in-house counsel provision for "Highly Confidential-Attorneys' Eyes Only" information. Nor can Big River establish a "probability of serious risk" if Mr. Lauridsen were entitled to access such information. Indeed, both this Court and the Federal Circuit have squarely addressed the very question before the Court and rejected Big River's overly restrictive approach.

In *U.S. Steel Corp.*, the seminal case addressing restrictions on in-house counsel's access to confidential information, the defendant argued for restricting in-house counsel's access to confidential information solely because there was "a greater likelihood of inadvertent disclosure by lawyers who [were] employees committed to remain in the environment of a single company." 730 F.2d at 1468-69. The Federal Circuit rejected this argument and found the defendant's arguments unpersuasive. Moreover, the Federal Circuit made clear that inclusion of an in-house counsel provision is the preferred approach:

> Whether an unacceptable opportunity for inadvertent disclosure exists, however, must be determined, as above indicated, by the

3

3058170v2

>facts *on a counsel-by-counsel basis*, and *cannot be determined solely by giving controlling weight to the classification of counsel as in-house rather than retained*.

*Id*. at 1468 (emphasis added).  The court further held that when an individual is properly identified, the determination of whether disclosure is appropriate "would be developed in light of the particular counsel's relationship and activities, *not solely on a counsel's status as in-house or retained*." *Id.*  The Federal Circuit has since reaffirmed its holding in *U.S. Steel Corp.*, stating that "a denial of access sought by in-house counsel on the sole ground of status as a corporate officer is error."  *Matsushita Elec. Indus. Co.*, 929 F.2d 1577, 1579, 1580 (1991).  *See also In re Sibia Neurosciences, Inc.*, 1997 U.S. App. LEXIS 31828, at *6-7 (Oct. 22, 1997).

Here, Big River seek to deny <u>all</u> in-house Sprint counsel access to "Highly Confidential—Attorney's Eyes Only" information on the sole basis of their status as corporate counsel.  Big River ignores the Federal Circuit's express holding that "status as in-house counsel cannot alone create [a] probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial of access."  *U.S. Steel Corp.*, 730 F.2d. at 1469.  Furthermore, Sprint's proposed in-house counsel provision (*see* Exh. A., ¶ 7.3(b)) provides for the determination of access to be made on counsel-by-counsel basis as the Federal Circuit has expressly approved.

Similarly, this Court, too, has addressed and rejected the argument that an attorney's status as in-house counsel, without more, does not justify denying that attorney access to confidential information.  In *In re: Independent Service Organizations Antitrust Litigation*, plaintiffs sought to deny in-house counsel's access to confidential information.  1995 U.S. Dist. LEXIS 4698, at *3.  The Court denied the plaintiff's request because counsel was merely providing legal advice.  *Id.* at *6.  It noted that "[n]umerous courts have held that providing legal advice is not a basis for barring in-house counsel from confidential information."  *Id.*  This Court also highlighted the significant prejudice that the defendant would suffer as a result of this

4

3058170v2

restriction. *Id.* at *4. In-house counsel would, in essence, be barred from overseeing the trial of the case and would be "handicapped" in analyzing defenses and counterclaims. *Id.* This Court also found that such a preclusion would prevent in-house counsel from fully advising the defendant about the litigation. *Id.*

Sprint merely seeks the opportunity to identify particular in-house counsel who may be given access to "Highly Confidential" information. The inclusion of this provision will allow properly identified in-house attorneys to advise Sprint in an informed manner. Big River's blanket exclusion will effectively bar Sprint's in-house counsel from playing any meaningful role in this case because they will be prevented from fully participating in the day-to-day activities necessary to supervise the case, including the discovery matters and motion practice that will more than likely arise. It was for these reasons that a protective order entitling in-house counsel access to confidential information was entered in the *Sprint v. Vonage* case. Case No. 05-CV-2433, Doc. No. 79, ¶ 7.3, p. 11 (D. Kan.). Indeed, Sprint's in-house counsel played a significant role in that case, assessing the defenses and counterclaims alleged by Vonage and providing valuable input for the various motions filed by both parties. Sprint will lose this valuable experience if Big River's blanket exclusion is accepted. Sprint should not be denied the opportunity to identify in-house counsel so that they may advise Sprint in a meaningful manner.

### III. Sprint's In-House Counsel, Lee Lauridsen, Should Have Access to Big River's Confidential Information Because He Is Not a Competitive Decisionmaker

As set forth in *U.S. Steel*, the proper procedure is to include an in-house counsel provision and identify specific individuals on a counsel-by-counsel basis. To this end, Sprint seeks to identify Lee Lauridsen, Sprint's in-house counsel, as an individual entitled to access under its proposed paragraph 7.3(b).

In order to provide Mr. Lauridsen with access to "Highly Confidential" information, Sprint must only establish that Mr. Lauridsen is not a "competitive decisionmaker." *U.S. Steel*, 730 F.2d at 1468 n.3.  The *U.S. Steel* court defined competitive decisionmaking as:

> "counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor."

*Id.*  Subsequent cases have elaborated on this concept by analyzing whether in-house counsel "would be virtually unable to compartmentalize the information and not use the information to seek to gain an unfair competitive advantage." *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 501 (D. Kan. 2007).  As set forth below, Mr. Lauridsen does not qualify as a "competitive decisionmaker."

Mr. Lauridsen's job responsibilities do not involve any activities that would give Sprint an unfair competitive advantage if he were to view Highly Confidential information.  He is not involved in pricing and product design decisions.  Declaration, ¶ 4.  Nor does Mr. Lauridsen play a role in Sprint's marketing and sales efforts or its general corporate strategic decisionmaking.  Declaration, ¶ 4.  Instead, Mr. Lauridsen's responsibilities remain solely legal in nature.

Mr. Lauridsen's daily activities involve the oversight of Sprint's litigation matters including, among other types of cases, patent, contract and business litigation.  Declaration, ¶ 6.  This does not, however, include involvement with any patent acquisition or patent prosecution activities.  Declaration, ¶ 5.  Instead, he supervises outside counsel's activities relating to this litigation and will assist counsel in preparing for trial.  Declaration, ¶ 7.  Mr. Lauridsen also advises upper-level management of the status of Sprint cases and therefore it is imperative that he have access to all materials so that he can give management an accurate assessment of the

case. Declaration, ¶ 8. In particular, he will need this information to effectively advise Sprint in evaluating and responding to any future summary judgment motions or settlement offers. Declaration, ¶ 7. These activities do not constitute competitive decisionmaking. *Volvo Penta of the Ams., Inc. v. Brunswick Corp.*, 187 F.R.D. 240, 241-44 (E.D. Va. 1999) (determining that in-house counsel was not a competitive decisionmaker because her responsibilities involved supervising outside counsel's activities and assisting in the preparation for trial); *see also Intervet, Inc. v. Merial Ltd.*, 241 F.R.D. 55, 58 (D.D.C. 2007) (holding that defendant's in-house counsel was not a competitive decisionmaker because she was an active member of the trial team in that case and was not involved in pricing, product design, purchasing, and strategy decisions).

Mr. Lauridsen also has an established record of being identified as an individual with access to Highly Confidential—Attorneys' Eyes Only Information. Indeed, Mr. Lauridsen was allowed access to Highly Confidential information in the *Sprint v. Vonage* case, and has been entitled to such access in dozens of other cases. Declaration, ¶ 9. Mr. Lauridsen's ability to compartmentalize this information and not use it outside litigation is beyond question. Not once has he been accused of using confidential information to engage in any competitive decisionmaking activities. Declaration, ¶ 9. The fact that no party has ever made such accusations against Mr. Lauridsen is itself grounds to establish that he is not a competitive decisionmaker. *See, e.g., In re: Indep. Serv. Orgs. Antitrust Litig.*, 1995 U.S. Dist. LEXIS 4698, at *5-7. *See also Intervet, Inc.*, 241 F.R.D. at 56-58 (determining that in-house counsel was not a competitive decisionmaker where her Declaration, among things, indicated that no one had ever suggested that she had misused confidential information made available to her in prior litigation).

For these reasons, Mr. Lauridsen is unquestionably entitled to access to Highly Confidential documents under the protective order.

3058170v2

**IV.     Conclusion**

For the reasons set forth above, the in-house counsel provision contained in Sprint's proposed protective order is both an appropriate and necessary provision that will allow in-house counsel to effectively manage this litigation. The Court should enter Sprint's proposed protective order allowing properly identified in-house counsel access to Highly Confidential Information. Should the Court enter such a protective order, Sprint also seeks permission from the Court to identify Mr. Lauridsen as an individual with access to Highly Confidential information because he is not a competitive decision maker.


Dated:  August 4, 2008                                /s/ Adam P. Seitz
                                                      B. Trent Webb, KS Bar No. 15965
                                                      Eric A. Buresh, KS Bar No. 19895
                                                      Adam P. Seitz, KS Bar No. 21059
                                                      SHOOK, HARDY & BACON L.L.P.
                                                      2555 Grand Boulevard
                                                      Kansas City, Missouri 64108-2613
                                                      Telephone:  (816) 474-6550
                                                      Facsimile:   (816) 421-5547

                                                      Attorneys for Plaintiff
                                                      SPRINT COMMUNICATIONS COMPANY
                                                      L.P.

9

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of August, 2008, a true and accurate copy of the above and foregoing was e-filed using the Court's ECF system, which automatically sent notice via e-mail to the following:

Christian Chadd Taylor
Perry R. Clark
Kirkland & Ellis LLP
555 California St.
Suite 2700
San Francisco, CA 94104
415-439-1400 (tel)
415-439-1500 (fax)

Don Lolli
Dysart, Taylor, Lay, Cotter & McMonigle, PC
4420 Madison Avenue, 2nd Floor
Kansas City, MO 64111
dlolli@dysarttaylor.com

Attorneys for Defendant
BIG RIVER TELEPHONE COMPANY, LLC


 _/s/  Adam P. Seitz_____
Attorney for Sprint Communications Company L.P.

9