IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 08-2046-JWL |
| BIG RIVER TELEPHONE COMPANY, LLC, | ) ) ) |
| Defendant. | ) |

## **ORDER**

This patent infringement case comes before the court on the motion of the plaintiff, Sprint Communications Company L.P., for entry of a protective order governing discovery that includes an in-house counsel provision and that specifically allows Sprint's in-house counsel, Lee Lauridsen, access to the confidential information of the defendant, Big River Telephone Company, LLC **(doc. 29)**. Defendant has filed a response (doc. 33), and plaintiff has filed a reply (doc. 34).

The parties agree that a protective order is warranted to restrict the use and disclosure of certain information. They have agreed to all of the language set forth in their proposed protective order,[1] except for one provision. The parties' proposed protective order classifies protected information into two tiers: "confidential" and "highly confidential–attorneys' eyes only." Paragraph 2.3 defines confidential information as information not generally available

---

[1] Doc. 29, ex. A.

or known to the public constituting or relating to trade secrets, commercial information, financial information, business relationship information, technical information, information pertaining to products and product development efforts, concepts or plans, and patent prosecution information. Highly confidential information is defined in paragraph 2.4 as extremely sensitive confidential information "whose disclosure to another Party or nonparty would create a substantial risk of serious injury to the business or competitive interests of the Producing Party that could not be avoided by less restrictive means."

Paragraph 7.3 of the proposed protective order sets forth to whom highly confidential information may be disclosed and includes outside counsel of record, experts, the court, court reporters, the author or source of the information, and professional vendors. Paragraph 7.3(b) allows highly confidential information to be disclosed to:

> the Receiving Party's House Counsel (1) to whom disclosure is reasonably necessary for this litigation, (2) who has signed the "Agreement to Be Bound by Protective Order" (Exhibit A), (3) who has been approved by the Designating Party, and (4) who is not involved in any competitive decision-making of the party.

Plaintiff seeks the inclusion of paragraph 7.3(b) in the protective order, while defendant maintains it is neither necessary nor appropriate. Plaintiff also seeks the court's determination that one of its in-house attorneys, Lee Lauridsen, is an individual entitled to access highly confidential information pursuant to paragraph 7.3(b).

Initially, the court notes that there is no absolute privilege for trade secrets and similar

confidential information.[2]  Fed. R. Civ. P. 26(c)(1) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."

> A party seeking to resist disclosure under Rule 26(c)(7)[3] must first establish that the information sought is a trade secret or other confidential research, development, or commercial information and then demonstrate that its disclosure might be harmful.  *Centurion Indus.*, 665 F.2d at 325-26.  If these requirements are met, the burden then shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action.  *Id.*  Finally, the court must balance the need of the party seeking discovery of the trade secrets and confidential information against the opposing party's claim of injury resulting from the disclosure.  *Id.*[4]

Defendant, as the party resisting disclosure, has the burden to show a probability that plaintiff's disclosure to in-house counsel would cause competitive harm.[5]  Categorical arguments that a party will be harmed by the disclosure are insufficient.[6]  Defendant must

---

[2]*Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981).

[3]Due to an amendment effective December 1, 2007, the provision previously contained in Fed. R. Civ. P. 26(c)(7) is now contained in Fed. R. Civ. P. 26(c)(1)(G).

[4]*MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 501 (D. Kan. 2007).

[5]*See id.*

[6]*See id.*; *In re Indep. Serv. Orgs. Antitrust Litig.*, No. MDL 1021, 1995 WL 151739, at *1-*2 (D. Kan. Mar. 9, 1995).

"make 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'"[7]

In some circumstances, certain sensitive information should not be disclosed to an in-house attorney involved in competitive decision-making.[8] Courts look at whether disclosure of the information to a competitor would allow disclosure to a competitive decision-maker who would be virtually unable to compartmentalize the information and not use it to seek to gain an unfair competitive advantage.[9] The appropriate inquiry is whether there is an unacceptable risk of or opportunity for inadvertent disclosure of confidential information.[10]

A determination of whether an unacceptable opportunity for inadvertent disclosure exists should not be based solely on an attorney's status as in-house or retained and should instead be made in light of the particular counsel's activities and relationship with the party.[11] A court should consider whether a particular attorney is involved in competitive decision-making, which includes advising or participating in pricing, product design, marketing or

---

[7] *MGP Ingredients, Inc.*, 245 F.R.D. at 501 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

[8] *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984).

[9] *MGP Ingredients, Inc.*, 245 F.R.D. at 501 (citing cases).

[10] *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 237 F.R.D. 405, 407 (N.D. Ill. 2006).

[11] *U.S. Steel Corp.*, 730 F.2d at 1468.

other decisions "made in light of similar or corresponding information about a competitor."[12]

Defendant argues that given the proposed protective order's definitions of confidential and highly confidential information, the information plaintiff is seeking the ability to disclose to its in-house counsel qualifies for protection under Fed. R. Civ. P. 26(c)(1)(G). Plaintiff does not oppose defendant's argument in its reply. The court therefore finds that defendant has established that highly confidential information constitutes a trade secret or other confidential research, development, or commercial information.

Defendant now must meet the rest of its burden by establishing that the disclosure of highly confidential information to plaintiff's in-house counsel might be harmful. Defendant seems to suggest that it has met this burden because, by definition, the disclosure of highly confidential information creates a substantial risk of serious injury to its business or competitive interests. Defendant has, however, agreed highly confidential information may be disclosed to persons other than in-house counsel. To meet its burden, defendant must set forth a particular and specific demonstration of fact regarding the likelihood of harm. The court finds defendant's reliance on the definition of highly confidential information is insufficient to meet its burden. Rather, defendant must show that the disclosure of highly confidential information specifically to plaintiff's in-house counsel will likely cause harm.

Defendant argues that Mr. Lauridsen is a competitive decision-maker and that disclosure of highly confidential information to him will create an unacceptable risk of

---

[12]*Id.* at 1468 n.3; *In re Indep. Serv. Orgs. Antitrust Litig.*, 1995 WL 151739, at *1.

inadvertent disclosure. The court first must determine whether Mr. Lauridsen is a competitive decision-maker. Plaintiff filed a declaration by Mr. Lauridsen regarding his responsibilities for plaintiff generally and in this case (doc. 29-3). Mr. Lauridsen, Senior Counsel for plaintiff, works exclusively in plaintiff's litigation department and states he does not engage in any competitive decision-making activities. Specifically, Mr. Lauridsen states that he plays no role in plaintiff's decisions relating to pricing, product design, marketing, sales efforts, or general corporate strategic decision-making. Mr. Lauridsen plays no role in acquiring patents or prosecuting patent applications. Mr. Lauridsen's main responsibility is to manage plaintiff's litigation matters, including by supervising outside counsel's activities relating to various cases.

As to this case, Mr. Lauridsen is an active participant in the trial team, supervising day-to-day activities of outside counsel, participating in strategy decisions, and evaluating discovery, pleadings, and any settlement offers. Mr. Lauridsen also advises upper level management of the status of this case. Mr. Lauridsen was granted access to highly confidential information in several other cases, and no allegations were made that he misused or revealed that confidential information.

Defendant argues that Mr. Lauridsen's responsibility for evaluating settlement offers is itself a type of competitive decision-making because any settlement offer in this case is likely to include a form of patent license. Defendant relies on *Intel Corp. v. VIA*

*Technologies, Inc.*[13] to support its proposition that evaluating licensing agreements constitutes competitive decision-making. Defendant contends Mr. Lauridsen's responsibilities of making strategy decisions and evaluating settlement offers is identical to the in-house attorney who was denied access to confidential information in *Intel Corp.* Plaintiff argues they do not have identical responsibilities.

The court in *Intel Corp.* noted that the risk of potential injury from inadvertent disclosure was increased because the defendant was the only unlicensed competitor of plaintiff in the highly competitive chipset market.[14] The court also noted that the in-house attorney had not litigated cases for at least five years and found her involvement in licensing through litigation constituted competitive decision-making. She was actively involved in negotiating the terms of licensing agreements as part of settling lawsuits. The court found that disclosure of confidential information to the in-house attorney would put her in the untenable position of having either to refuse to offer crucial legal advice at times or risk disclosing protected information.[15] The court also concluded that confidential information disclosed to the in-house attorney may provide the plaintiff a competitive advantage in negotiating related licenses in the future.[16]

---

[13] 198 F.R.D. 525 (N.D. Cal. 2000).

[14] *Id.* at 531.

[15] *Id.* at 530.

[16] *Id.*

Here, plaintiff notes that there is no evidence Mr. Lauridsen advises managers regarding licensing agreements in settling litigation for plaintiff, unlike the in-house attorney in *Intel Corp.* "Unrebutted statements made by counsel asserting that he does not participate in competitive decisionmaking, which the court has no reason to doubt, form a reasonable basis to conclude that counsel is isolated from competitive decisionmaking."[17] An evidentiary hearing in *Intel Corp.* shed light on the in-house attorney's competitive decision-making. This court, however, has no reason to doubt Mr. Lauridsen's declaration that he is not involved in competitive decision-making, especially when defendant has merely set forth unsupported contentions that Mr. Lauridsen advises managers on licensing agreements.

Plaintiff further argues that there is no indication Mr. Lauridsen's involvement in settlement negotiations affects plaintiff's competitiveness. The court agrees with plaintiff that defendant has failed to show disclosure to Mr. Lauridsen would present a risk of competitive harm to defendant similar to the harm shown in *Intel Corp.* Defendant also argues that because Mr. Lauridsen will be evaluating settlement offers in this case and in the related patent litigation between plaintiff and three other companies, the risk of inadvertent disclosure is even more severe. As plaintiff argues, the court finds that defendant has failed to show what potential harm it would suffer from Mr. Lauridsen's involvement in settlement efforts in the related patent cases.

Defendant next argues that Mr. Lauridsen advises competitive decision-makers about

---

[17] *Id.* at 529.

this case, which would make inadvertent disclosure more likely. Defendant argues that Mr. Lauridsen will inevitably and perhaps inadvertently incorporate knowledge of highly confidential information into the advice he gives to upper level management, who are involved in decisions and activities, both related and unrelated to this case, that could negatively impact defendant. Defendant relies on language in a case decided prior to *U.S. Steel* that suggests in-house counsel should be denied access to confidential information solely on the basis of their status as in-house.[18] This proposition, however, was clearly rejected in *U.S. Steel*.[19]

Whether an in-house attorney has regular contact with upper-level management who are involved in competitive decision-making is largely irrelevant.[20] The inquiry is not regular contact with corporate officials who make competitive decisions, but rather whether the in-house counsel engages in advice and participation in competitive decision-making.[21] Denying in-house counsel access to confidential information merely because they have regular contact with competitive decision-makers would disqualify almost all in-house counsel and would effectively constitute the very per se rule rejected in *U.S. Steel*.[22] The

---

[18] *See FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980).

[19] *U.S. Steel Corp.*, 730 F.2d at 1469.

[20] *Matsushita Elec. Indus. Co., Ltd. v. United States*, 929 F.2d 1577, 1580 (Fed. Cir. 1991).

[21] *Id.*

[22] *Id.*

court finds that Mr. Lauridsen's contacts with competitive decision-makers does not make inadvertent disclosure more likely.

Defendant argues Mr. Lauridsen will have "every incentive" to disclose as much information as possible to his superiors. In-house counsel, like retained counsel, are officers of the court, are bound by the same code of professional responsibility, and are subject to the same sanctions.[23] Further, before he receives highly confidential information, Mr. Lauridsen must sign the parties' agreement to be bound by protective order,[24] which subjects him to sanctions and punishment in the nature of contempt for failing to comply with the protective order. Mr. Lauridsen has never been accused of improperly using confidential information he received. Because defendant has not shown otherwise, the court presumes Mr. Lauridsen will behave in an ethical manner and comply with the terms of the protective order.

The court finds defendant has not met its burden to show disclosure of highly confidential information to plaintiff's in-house counsel will likely cause harm. Because the burden never shifted to plaintiff, the court will not address whether plaintiff has established that the disclosure is relevant and necessary to the action. The court also never reaches the final step of balancing plaintiff's need for disclosure to its in-house counsel against defendant's claim of injury resulting from the disclosure.

Defendant has failed to show that disclosure of highly confidential information to Mr.

---

[23] *U.S. Steel Corp.*, 730 F.2d at 1468.

[24] Doc. 29, ex. A, at 18.

Lauridsen would present an unacceptable risk of or opportunity for inadvertent disclosure of confidential information or that Mr. Lauridsen is a competitive decision-maker. Although the burden never shifted to plaintiff to show disclosure to Mr. Lauridsen is relevant and necessary to the action, the court will briefly address whether disclosure to him is "reasonably necessary for this litigation," as required by paragraph 7.3(b) of the parties' proposed protective order. Mr. Lauridsen advises upper-level management of the status of this case, and he therefore needs access to all materials to give them an accurate assessment of the case. Mr. Lauridsen also needs access to highly confidential information to effectively advise plaintiff in evaluating and responding to motions and settlement offers. The court therefore finds that, provided he sign the parties' agreement to be bound by the protective order, Mr. Lauridsen is an in-house attorney who should have access to highly confidential information.

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1. Plaintiff's motion for entry of a protective order governing discovery that includes an in-house counsel provision and that specifically allows Sprint's in-house counsel, Mr. Lauridsen, access to defendant's confidential information **(doc. 29)** is granted. The court simultaneously enters the parties' proposed protective order with paragraph 7.3(b).

2. Mr. Lauridsen is hereby deemed an in-house attorney with access to highly confidential information, pursuant to paragraph 7.3(b) of the court's protective order.

IT IS SO ORDERED.

Dated this 16th day of September, 2008, at Kansas City, Kansas.

 s/James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge